Jonathan M. Korn
BLANK ROME LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
(609) 750-7700 (Phone)
(609) 750-7701 (Fax)
Korn@BlankRome.com

James N. Benedict (*Pro Hac Vice*)
Sean M. Murphy (*Pro Hac Vice*)
MILBANK, TWEED, HADLEY & McCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000 (Phone)
(212) 530-5219 (Fax)
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY ANN SIVOLELLA, for the use and benefit of the EQ/Common Stock Index Portfolio, the EQ/Equity Growth PLUS Portfolio, the EQ/Equity 500 Index Portfolio, the EQ/Large Cap Value PLUS Portfolio, the EQ/Global Multi-Sector Equity Portfolio, the EQ/Mid Cap Value PLUS Portfolio, the EQ/GAMCO Small Company Value, and the EQ/Intermediate Government Bond Index Portfolio,<br><br>                                          Plaintiff,<br><br>vs.<br><br>AXA EQUITABLE LIFE INSURANCE COMPANY and AXA EQUITABLE FUNDS MANAGEMENT GROUP, LLC,<br>                                          Defendants. | Civil Action No. 3:11-cv-04194 (PGS)<br><br>and<br><br>Civil Action No. 3:13-cv-00312 (PGS) |
| GLENN D. SANFORD, *et al.,*<br>                                          Plaintiffs,<br><br>vs.<br><br>AXA EQUITABLE FUNDS MANAGEMENT GROUP, LLC,<br><br>                                          Defendant. | **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE PLAINTIFFS' DEMANDS FOR A JURY TRIAL**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**FILED ELECTRONICALLY** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT................................................................................................ 1

    I.    PLAINTIFFS' AUTHORITIES SUPPORT THE WELL-SETTLED
        RULE THAT THERE IS NO RIGHT TO A JURY TRIAL UNDER
        SECTION 36(b). ................................................................... 1

        A.    Plaintiffs' Reliance on *Feltner v. Columbia Pictures Television,*
               *Inc.* is Misplaced. .......................................................... 1

               1.    Section 36(b)'s Reference to "Actual Damages" Does Not Indicate
                    Congressional Intent to Afford a Right to a Jury
                    Trial................................................................... 2

               2.    Comparing Section 36(b) to Other Provisions of the Investment
                    Company Act of 1940 Does Not Indicate Congressional Intent to
                    Provide a Right to a Jury Trial under Section 36(b)................. 5

               3.    The Circuit Court Decisions that have Rejected the Right to a Jury
                    Trial under Section 36(b) are Consistent with *Feltner*............ 7

        B.    Plaintiffs' Reliance on *Great-West Life & Annuity Insurance Co. v.*
               *Knudson* is Similarly Misplaced. ............................................ 9

    II.    THE COURT SHOULD REJECT PLAINTIFFS' REQUEST TO
        IMPANEL AN ADVISORY JURY. ................................................ 14

CONCLUSION.......................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

*Brosted v. Unum Life Ins. Co. of Am.,*
    421 F.3d 459 (7th Cir. 2005) .........................................................................6, 7, 12

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,*
    526 U.S. 687 (1999)..............................................................................................4

*Curtis v. Loether,*
    415 U.S. 189 (1974)..............................................................................................2

*Dairy Queen, Inc. v. Wood,*
    369 U.S. 469 (1962)...........................................................................................12

*Dewey Elecs. Corp. v. Montage, Inc.,*
    117 F.R.D. 73 (M.D. Pa. 1987)..........................................................................15

*F.P. Woll & Co. v. Fifth & Mitchell St., Corp.,*
    No. 96-5973, 2005 WL 1592948 (E.D. Pa. July 1, 2005) ....................................4

*Feltner v. Columbia Pictures Television, Inc.,*
    523 U.S. 340 (1998)..................................................................................... passim

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,*
    487 F. Supp. 999 (S.D.N.Y. 1980)...........................................................5, 8, 13

*Great-West Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002)..................................................................................... passim

*In re Currency Conversion Fee Antitrust Litig.,*
    Nos. 04-5723, 05-7116, 2012 WL 4361443 (S.D.N.Y. Sept. 11, 2012)...................14

*In re Evangelist,*
    760 F.2d 27 (1st Cir. 1985)........................................................................ passim

*In re Federated Mutual Funds Excessive Fee Litig.,*
    No. 2:04-cv-00352 (W.D. Pa. Mar. 7, 2011) .....................................................15

*In re Gartenberg,*
    636 F.2d 16 (2d Cir. 1980)......................................................................... passim

*Jones v. Harris Assocs. L.P.,*
    130 S. Ct. 1418 (2010).....................................................................................6, 15

*Kalish v. Franklin Advisors, Inc.,*
    928 F.2d 590 (2d Cir. 1991)...............................................................................7, 14

*Kamen v. Kemper Fin. Servs., Inc.,*
    908 F.2d 1338 (7th Cir. 1990) ........................................................................8, 14

*Nat'l Sec. Systems, Inc. v. Iola,*
    700 F.3d 65 (3d Cir. 2012).................................................................................11

*Pereira v. Farace,*
    413 F.3d 330 (2d Cir. 2005)...........................................................................10, 11

*Pichler v. UNITE,*
    542 F.3d 380 (3rd Cir. 2008) ...............................................................................4

*Schuyt v. Rowe Price Prime Reserve Fund, Inc.,*
    835 F.2d 45 (2d Cir. 1987)..................................................................................12

*Skoldberg v. Villani,*
    601 F. Supp. 981 (S.D.N.Y. 1985)......................................................................14

*Skretvedt v. E.I. DuPont De Nemours,*
    372 F.3d 193 (3d Cir. 2004)................................................................................12

*Stoneback v. ArtsQuest,*
    No. 12-3286, 2012 WL 4963624 (E.D. Pa. Oct. 17, 2012) .....................................4

*Teamsters Local No. 391 v. Terry,*
    494 U.S. 558 (1990)...........................................................................................14

*Tull v. United States,*
    481 U.S. 412 (1987).............................................................................................2

*United States ex rel. Drakeford v. Tuomey Healthcare System, Inc.,*
    675 F.3d 394 (4th Cir. 2012) ..............................................................................12

*United States v. Lane Labs-USA Inc.,*
    427 F.3d 219 (3d Cir. 2005)................................................................................13

*Van Asdale v. Int'l Game Tech.,*
    No. 04-cv-703, 2010 WL 1490349 (D. Nev. Apr. 13, 2010)..................................15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. VII ....................................................................... passim

**STATUTES**

15 U.S.C. § 80a-35(b) ........................................................................ passim

**RULES**

Fed. R. Civ. P. 39..............................................................................................14

**OTHER AUTHORITIES**

Restatement (Third) of Restitution and Unjust Enrichment (2012)...............................12

S. Rep. No. 91-184, 91st Cong., 2d Sess. (1969) .......................................................6

## PRELIMINARY STATEMENT

No court has ever held that a party is entitled to a jury trial in an action seeking recovery under Section 36(b). As Defendants' opening brief showed, no fewer than seventeen decisions—including opinions from three circuit courts of appeal, as well as Judge Debevoise from the District of New Jersey—have found that Section 36(b) does not afford a right to a jury trial. Consistent with this well-established precedent, all seven Section 36(b) actions that have been tried to judgment have been decided by courts.

In response to Defendants' motion, Plaintiffs ask this Court to reject this mountain of authority on the basis of Supreme Court cases that do not involve Section 36(b) or the Investment Company Act of 1940, or even mention by name, the dozens of cases that Plaintiffs claim such authority overrules. Despite Plaintiffs' assertion that there has been a radical change to the law addressing the right to a jury trial, no court has ever suggested that the Supreme Court has done anything to alter the longstanding analysis that has been applied for decades. In actuality, Plaintiffs' authorities only serve to reinforce the well-established rule that Section 36(b) does not afford a right to a jury trial.

## ARGUMENT

I.    **PLAINTIFFS' AUTHORITIES SUPPORT THE WELL-SETTLED RULE THAT THERE IS NO RIGHT TO A JURY TRIAL UNDER SECTION 36(b).**

    A.    **Plaintiffs' Reliance on *Feltner v. Columbia Pictures Television, Inc.* is Misplaced.**

Plaintiffs claim that *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) "changed the analytical framework for the evaluation of a party's entitlement to a jury." Pls.' Br. at 1-2. *Feltner*, however, simply reiterates the well-settled principle that before courts inquire "into the applicability of the Seventh Amendment," they must first consider whether there is

"'any congressional intent to grant . . . the right to a jury trial.'" *Feltner*, 523 U.S. at 345 (quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)); *see also Curtis v. Loether*, 415 U.S. 189, 192 n.6 (1974). This "cardinal principle" has been applied for decades, *Loether*, 415 U.S. at 192 n.6, including in the Section 36(b) cases cited in Defendants' brief. As the Second Circuit found in *In re Gartenberg*, 636 F.2d 16, 17 (2d Cir. 1980), nothing in the text of Section 36(b) demonstrates any congressional intent to grant the right to a jury trial. *See* 15 U.S.C. § 80a-35(b)(3).

Plaintiffs nevertheless contend that *Feltner* supports a finding that Section 36(b) affords a right to a jury trial. Each of Plaintiffs' arguments are without merit: <u>first</u>, Section 36(b)'s reference to "actual damages" does not indicate congressional intent to afford a right to a jury trial; <u>second</u>, comparing Section 36(b) to other sections of the Investment Company Act of 1940 (the "<u>Act</u>") also does not evidence such an intent; and <u>finally</u>, *Feltner* is consistent with well-settled Section 36(b) precedent holding that Plaintiffs are not entitled to a jury trial.[1]

1.    <u>Section 36(b)'s Reference to "Actual Damages" Does Not Indicate Congressional Intent to Afford a Right to a Jury Trial.</u>

Plaintiffs contend that Section 36(b)'s reference to "actual damages" evidences a clear congressional intent to afford Section 36(b) plaintiffs a right to a jury trial. *See* Pls.' Br. at 11 ("ICA § 36(b)(3) specifically provides for 'actual damages' and thus, it is 'beyond dispute that a plaintiff who seeks to recover actual damages is entitled to a jury trial." (quoting *Feltner*, 523 U.S. at 346)). Plaintiffs are incorrect.

---

[1] Plaintiffs also contend in one line of their brief, without citation to any authority, that they have a right to a jury trial because "the amount of damages is a range that must be determined." Pls.' Br. at 14. The Supreme Court has explicitly rejected this argument. *See Tull*, 481 U.S. at 422 n.7 ("The Government distinguishes this suit from other actions to collect a statutory penalty on the basis that the statutory penalty here is not fixed or readily calculable from a fixed formula. We do not find this distinction to be significant.").

The *Feltner* Court did not hold, much less suggest, that any statute referencing "actual damages" affords a right to a jury trial. Rather, *Feltner* held, after an exhaustive analysis of historical precedent, that a plaintiff seeking statutory damages under the Copyright Act of 1976 has a Seventh Amendment right to a jury trial because copyright actions have been tried to juries for over two-hundred years. *Feltner*, 523 U.S. at 350 ("The practice of trying copyright damages actions at law before juries was followed in this country, where statutory copyright protections were enacted even before adoption of the Constitution."). This is in stark contrast with the history of Section 36(b) actions, which have never been tried to juries, *see* Defs.' Br. at 13 n.8, and with the history of analogous common-law claims for breach of fiduciary duty, which are almost uniformly actions in equity carrying no right to trial by jury, *see In re Evangelist*, 760 F.2d 27, 29 (1st Cir. 1985).

Taking *Feltner* out of its copyright context, Plaintiffs erroneously contend that the decision in that case stands for the proposition that where a statute references "actual damages" it is "beyond dispute" that a plaintiff is entitled to a jury trial. Pls.' Br. at 11. But *Feltner* considered whether there was congressional intent to grant a right to a jury trial for a plaintiff who seeks "statutory damages" under the Copyright Act. *Feltner*, 523 U.S. at 345-46. In comparing the "statutory damages" provision with the portion of the statute that permits a plaintiff to seek "actual damages," the Court noted that actual damages "generally are thought to constitute legal relief." *Id.* at 346. The Court then quoted a <u>copyright treatise</u> for the proposition that when a plaintiff seeks "actual damages" <u>under the Copyright Act</u> it is "beyond dispute" that they are entitled to a jury trial. *Id.* (quoting 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.10[B] (1997)). While this treatise's pronouncement may make sense in light of the two-

hundred year history of trying copyright claims to juries, it has no bearing on whether Section 36(b) affords a right to a jury trial.

The mere reference to "actual damages" in statutory text does not demonstrate congressional intent to grant a right to trial by jury. Just one year after the Supreme Court decided *Feltner*, it cautioned against relying on phrases of statutory text alone—even when they generally refer to legal relief—to conclude that a statutory right to a jury trial exists. In *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707-08 (1999), the Court refused to find a statutory right to a jury trial under 42 U.S.C. § 1983, which expressly authorizes a party to seek relief through an "action at law." (emphasis added). In the absence of any other evidence of congressional intent, the Court concluded that a jury trial right was not a "necessary implication" of the phrase "action at law." *Id.* at 708.

Similarly, courts in the Third Circuit have declined to interpret statutory references to "actual damages" without more as demonstrating a clear congressional intent to confer a right to trial by jury. For instance, the Third Circuit recently held that the Driver's Privacy Protection Act of 1994 does not confer a statutory right to a jury trial even though it provides for remedies including "actual damages" and "punitive damages." *Pichler v. UNITE*, 542 F.3d 380, 386 n.7, 387 (3rd Cir. 2008); *see also Stoneback v. ArtsQuest*, No. 12-3286, 2012 WL 4963624, at *6-7 (E.D. Pa. Oct. 17, 2012) (concluding that Pennsylvania's whistleblower law does not confer a statutory right to a jury even though it provided for "actual damages"); *cf. F.P. Woll & Co. v. Fifth & Mitchell St., Corp.*, No. 96-5973, 2005 WL 1592948, at *3-4 (E.D. Pa. July 1, 2005) (declining to find a right to a jury trial where neither the statute nor its legislative history mention a jury right).

This case law is consistent with longstanding Section 36(b) precedent holding that the statutory reference to "damages" in Section 36(b) does not guarantee a jury trial.  *See, e.g.*, *In re Evangelist*, 760 F.2d at 30 ("the simple use of the word 'damages,' in light of the other evidence of Congressional intent, is not sufficient to show that Congress intended to create an action 'at law' in the typical § 80a-35 case." (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 487 F. Supp. 999, 1006 (S.D.N.Y. 1980) ("Far from being conclusive, the presence of the word 'damages' merely launches the inquiry into the legislative intent behind the wording of § 36(b). . . . [G]iven the repeated statement in the legislative history that actions under § 36(b) are equitable, to be administered on equitable standards, it would seem impossible to conclude from the use of the word 'damages' that Congress thereby provided for a trial by jury."))).

> ## 2. Comparing Section 36(b) to Other Provisions of the Investment Company Act of 1940 Does Not Indicate Congressional Intent to Provide a Right to a Jury Trial under Section 36(b).

Plaintiffs next contend that "[a]dditional support for Plaintiffs' statutory right to a jury trial can be found by comparing" Section 36(b) to other provisions of the Act.  Pls.' Br. at 12. This is also wrong.

Plaintiffs are incorrect that, as compared to Section 36(a), Section 36(b) "is silent on the identity of the fact finder."  *Id.*  On two occasions, Section 36(b) specifically references the "court" as the arbiter of claims: (1) "approval by the board of directors of . . . such compensation or payments . . . shall be given such consideration by the <u>court</u> as is deemed appropriate under all the circumstances"; and (2) "[n]o finding by a <u>court</u> with respect to a breach of fiduciary duty under this subsection shall be a basis for . . . [a violation of other securities laws or injunctive relief by the Securities and Exchange Commission]."  15 U.S.C. § 80a-35(b)(2), (b)(6) (emphasis added).  These references to the "court" as the arbiter of Section 36(b) claims are consistent with

the Supreme Court's recent discussion of Section 36(b) in *Jones v. Harris*,[2] as well as the

legislative history of Section 36(b),[3] which never mentions a right to a jury trial, but repeatedly

refers to the "court" as the fact finder and to Section 36(b) claims as "equitable."[4]

      Plaintiffs are also incorrect that Section 36(a)'s reference to "injunctive relief" indicates

that Congress intended to create an equitable remedy with respect to Section 36(a), but a legal

remedy with respect to Section 36(b). *See* Pls.' Br. at 12.  Plaintiffs reason that because

Congress expressly offered an equitable remedy—injunctive relief—in Section 36(a) that was

not offered in Section 36(b), that Section 36(b) does not offer any equitable remedies.  It is well-

settled, however, that there are a number of equitable remedies other than injunctive relief, one

of which is equitable restitution in the form of money damages.  *See, e.g., Brosted v. Unum Life*

---

[2] *See* Defs.' Br. at 6-7 (noting that the Supreme Court "uniformly speaks of courts, not juries, performing the multi-part *Gartenberg* analysis" and quoting *Jones v. Harris*, which stated "courts may give such comparisons [of fees charged to funds and other investment advisory clients] the weight that they merit in light of the similarities and differences between the services that the clients in question require"; "courts should be mindful that the Act does not necessarily ensure fee parity between mutual funds and institutional clients"; "courts should not rely too heavily on comparisons with fees charged to mutual funds by other advisers"; "[w]here a board's process for negotiating and reviewing investment-adviser compensation is robust, a reviewing court should afford commensurate deference to the outcome of the bargaining process"; "the standard for fiduciary breach under § 36(b) does not call for judicial second-guessing of informed board decisions," 130 S. Ct. 1418, 1428-30 (2010) (emphasis added)).

[3] *See* S. Rep. No. 91-184, 91st Cong., 2d Sess. (1969), *reprinted in* [1970] U.S.C.C.A.N., 91st Cong., 2d Sess. at 4910 ("it is intended that the court look at all the facts . . . in order to reach a decision as to whether the adviser has properly acted as a fiduciary in relation to such compensation."; "The directors of a fund have the initial responsibility for approving management contracts.  Section 36(b)(2) therefore instructs the courts to consider the approval given by the directors of the fund to such compensation and provides that their approval shall be given such consideration as the court deems appropriate under all the circumstances."; "Among other things, the court might wish to evaluate whether the deliberations of the directors were a matter of substance or a mere formality."; "The approval by shareholders of the management fee is also to be given such consideration as the court may deem appropriate under all the circumstances."; "plaintiff has the burden of proving to the satisfaction of the court that the defendant has committed a breach of fiduciary duty.") (emphasis added) (hereinafter "S. Rep. No. 91-184").

[4] Justice Scalia notes in his concurrence in *Feltner* that the term "court" can sometimes have a "broader meaning, which includes both judge and jury" and concludes that the statute in *Feltner* can be read to provide for a jury trial because it references "court."  523 U.S. at 356.  Underlying this conclusion, however, was Justice Scalia's analysis of the legislative history, which he believed showed that the precursor to the statute at-issue contemplated jury trials.  Here, by contrast, Section 36(b)'s legislative history clearly demonstrates that Congress intended to create an equitable remedy that would be tried by a judge, not a jury.  *See, e.g.*, S. Rep. No. 91-184 at 4911 (describing Section 36(b) as an "equitable action for breach of fiduciary duty").

*Ins. Co. of Am.*, 421 F.3d 459, 466 (7th Cir. 2005) ("[R]estitution may be in the form of monetary relief." (internal quotation marks omitted)).  This is precisely the remedy that courts have held Section 36(b) provides.  *See, e.g., Kalish v. Franklin Advisors, Inc.*, 928 F.2d 590, 592 (2d Cir. 1991) ("The central issue in this action is whether the fund adviser violated its fiduciary duty to the fund by exacting an exorbitant fee.  Any unreasonable portion of the fee must be returned to the fund.  This restitutionary relief is clearly equitable in nature."); Defs.' Br. at 9-10 (collecting cases).

        3.      <u>The Circuit Court Decisions that have Rejected the Right to a Jury Trial under Section 36(b) are Consistent with *Feltner*.</u>

Finally, Plaintiffs argue that *In re Gartenberg* and the other circuit court decisions that rejected a right to a jury trial under Section 36(b) "do[] not survive *Feltner*" because they "employ[] a different method of analysis." Pls.' Br. at 13.  This is not so.  *In re Gartenberg* and its progeny are consistent with *Feltner*.

As noted above, *Feltner* reiterates the well-settled principle that courts should consider the statutory text before "inquiring into the applicability of the Seventh Amendment." *Feltner*, 523 U.S. at 345.  That is exactly what the Second Circuit did in *In re Gartenberg*.  Before addressing the Seventh Amendment, the Second Circuit noted:

> [A]lthough Congress created what it clearly recognized to be an equitable cause of action for breach of fiduciary duty, it made no express provision in the statute for nonjury enforcement.  Whether the jury-non-jury issue was "consistently ignored", as one writer suggested at the time, or whether Congress felt that explicitness on this issue was either unnecessary or unwise, the fact remains that the revised statute is silent on this point.

*In re Gartenberg*, 636 F.2d at 17 (citation and footnote omitted).  Given that the statutory language was inconclusive, the court went on to analyze (as *Feltner* instructs) whether there is a right to a jury trial under the Seventh Amendment.  *Id.* at 17-18.

Plaintiffs nevertheless contend that *In re Gartenberg* is inconsistent with *Feltner* because the Second Circuit noted that "we must look to the relief which [the petitioner] seeks, not the statute which gives [the petitioner] the right to sue." Pls.' Br. at 13 (quoting *In re Gartenberg*, 636 F.2d at 18). Plaintiffs take this statement out of context: It addresses how to determine whether an action is in law or equity under the Seventh Amendment. When the court made this statement, it had already considered whether the text of Section 36(b) conferred a right to a jury trial and found that it did not. *In re Gartenberg*, 636 F.2d at 18.[5]

The circuit court decisions following *In re Gartenberg* are also fully consistent with *Feltner*. Each considered whether the statutory text affords a right to a jury trial. *See, e.g.*, *In re Evangelist*, 760 F.2d at 30 (analyzing the text of Section 36(b) and concluding that the "simple use of the word 'damages,' in light of the other evidence of Congressional intent, is not sufficient to show that Congress intended to create an action 'at law' in the typical [Section 36(b)] case" (citing *Gartenberg*, 487 F. Supp. at 1006)); *Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1351 (7th Cir. 1990) (noting Section 36(b)'s textual limitations on possible recoveries and concluding that "we adopt both the holding and rationale of *Evangelist*"). Plaintiffs are mistaken

---

[5] Plaintiffs also contend that *In re Gartenberg* is distinguishable because there the plaintiffs sought an "accounting" and not damages. *See* Pls.' Br. at 13; *In re Gartenberg*, 636 F.2d at 17 ("Petitioner demanded that the adviser and its parent company be required 'to account to the Trust for all excessive advisory fees paid to the Adviser by the Trust up to the date of judgment and to repay such fees to the Trust.'"). There is no meaningful difference between the relief sought by the plaintiffs in *In re Gartenberg* and the relief Plaintiffs seek here. Both request restitution of any excessive fees paid to the investment adviser. Indeed, the First Circuit in *In re Evangelist* rejected the identical argument:

> We can find no significant differences of any sort between the two complaints except that one uses the word "account" while the other uses the word "damages." And, in our view, the right to a jury trial cannot turn on the simple substitution of a different word. Otherwise, any equitable action for money, say for restitution, could become a legal action by the use of the word "damages" in place of the word "restitution."

760 F.2d at 30 (citations omitted).

that these authorities "do[] not survive *Feltner*." Pls.' Br. at 13. These cases, as well as the similarly reasoned district court decisions, remain directly on-point.

      **B.**    **Plaintiffs' Reliance on *Great-West Life & Annuity Insurance Co. v. Knudson* is Similarly Misplaced.**

Relying on *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), Plaintiffs contend that they are entitled to a jury trial under the Seventh Amendment because they are seeking "legal restitution" in the form of "compensatory damages." Pls.' Br. at 15-22. This argument is belied by Plaintiffs' complaints, which seek the "repayment of all unlawful and/or excessive fees paid to [Defendants]." *Sivolella* Amended Complaint at Prayer for Relief ¶ B; *Sanford* Complaint at Prayer for Relief ¶ B. Under *Great-West* (and its progeny), this is a classic example of a request for equitable restitution.

As Plaintiffs recognize, the Supreme Court in *Great-West* explained that restitution is an equitable remedy when the action seeks "not to impose personal liability on the defendant, but to restore to the plaintiff <u>particular funds</u> or property in the defendant's possession." 534 U.S. at 214 (emphasis added). In contrast, restitution is a legal remedy when it seeks the recovery of "money to pay for some benefit the defendant had received from [plaintiff]," as such claims are "viewed essentially as actions at law for breach of contract." *Id*. at 213.

Applying this framework, the Court dismissed a claim asserted under the Employee Retirement Income Security Act of 1974 ("<u>ERISA</u>"), finding that the relevant ERISA provision authorized only equitable relief and the claim and remedy at issue were not equitable in nature. *Id*. at 212-15. The petitioners in that case (an employer, insurance company, and employee benefits plan) sought payment from the respondents pursuant to a "reimbursement provision" in the respondents' employer-sponsored benefits plan. *Id*. at 206-09. The Court concluded that the petitioners sought legal restitution—not equitable restitution—because the funds at issue <u>were</u>

never in the respondents' possession and the petitioners' claim was, instead, premised on a contractual right under the plan's reimbursement provision to recover money to pay for a benefit the petitioners had conferred on the respondents. *Id.*[6]

Considering *Great-West*, the Second Circuit in *Pereira v. Farace*, 413 F.3d 330, 333-36 (2d Cir. 2005) addressed whether there was a right to a jury trial on claims brought by the trustee of a bankrupt corporation against certain of the corporation's former officers and directors relating to the improper use of corporate assets. Citing the distinction made between legal and equitable restitution, the court held that because the trustee did not seek to recover funds that were ever in the officers' or directors' possession, and only sought to recover funds attributable to the corporation's loss, the trustee's claim was for compensatory damages, rather than equitable restitution. *Id.* at 339-41.

Taken together, *Great-West* and *Pereira* only reinforce that Section 36(b) actions involve equitable restitution. Unlike the legal remedy sought in *Great-West*, Section 36(b) claims are not "actions at law for breach of contract" that seek to recover "money to pay for some benefit" that a mutual fund has bestowed on its investment adviser. *Great-West*, 534 U.S. at 213. And unlike the legal remedy sought in *Pereira*, Section 36(b) actions do not seek to recover funds that were never in the investment adviser's possession. *Pereira*, 413 F.3d at 339-40. Instead, Section 36(b) claims seek "to restore to the [mutual fund] particular funds . . . in the [investment adviser's] possession," *i.e.*, the allegedly excessive management fees. *Great-West*, 534 U.S. at 214.

---

[6] The funds at issue in *Great-West* were the proceeds from a settlement of the respondents' tort action. *Great-West*, 534 U.S. at 214. The proceeds of that settlement were paid to a trust and to the respondents' attorneys, but were neither paid to nor ever in the possession of the respondents. *Id.* at 214.

By definition, this is equitable restitution. Indeed, the "disgorgement of improper profits"—here, the allegedly excessive management fees—is one of those "historical cause[s] of action . . . for monetary relief that [the Supreme Court has] characterized as equitable." *Feltner*, 523 U.S. at 352; *see also Nat'l Sec. Systems, Inc. v. Iola*, 700 F.3d 65, 101 (3d Cir. 2012) ("It is undisputed that restitution of ill-gotten commissions is an equitable remedy."); *In re Evangelist*, 760 F.2d at 30 ("Like other remedies of restitution, [the] remedy [set forth in Section 36(b)] requires one owing a fiduciary duty to pay to the beneficiary of that obligation—to 'disgorge'— money taken in derogation of the duty.").

Plaintiffs nevertheless offer several reasons why they believe the standard set forth in *Great-West* (and applied in *Pereira*) supports their position. These arguments are unavailing.

First, Plaintiffs assert that their complaints "simply seek awards of 'compensatory damages' against Defendants, without reference to any 'particular funds or property.'" *See* Pls.' Br. at 21 (citing *Great-West*, 534 U.S. at 214). This is not true. Plaintiffs' complaints make explicit reference to particular funds in Defendants' possession—namely, the "repayment of all unlawful and/or excessive fees paid to [Defendants]." *See Sivolella* Amended Complaint at Prayer for Relief ¶ B; *Sanford* Complaint at Prayer for Relief ¶ B (emphasis added).[7] In fact, Plaintiffs admit in their answering brief that they "are suing AXA for excessive fees." Pls.' Br. at 4 (emphasis added).

---

[7] Plaintiffs' complaints are replete with requests for the "repayment" or "restitution" of all "excessive fees" paid to the Defendants with respect to their other claims. *See, e.g.*, *Sivolella* Amended Complaint at Prayer for Relief ¶ C (seeking pursuant to 15 U.S.C. § 80a-46(b) "restitution of substantially all, of the investment management fees paid to [Defendants], that exceeded the fees that were paid to these funds' sub-advisers, by the AXA Funds/Advisor Trust"); *Sanford* Complaint at Prayer for Relief ¶ C (same); *Sivolella* Amended Complaint at Prayer for Relief ¶ E (seeking pursuant to 15 U.S.C. § 80a-46(b) "restitution of substantially all of the investment management fees paid to [Defendants]"); *id.* at Prayer for Relief ¶ G (seeking pursuant to an unjust enrichment theory "restitution of substantially all of the investment management fees . . . charged to the Payer Class on investments into the AXA Funds, but did not pay to these funds' sub-advisers").

- 11 -

In any event, "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962). While it is convenient for Plaintiffs to label their relief as "compensatory damages," what matters for purposes of the Seventh Amendment is that in substance Plaintiffs seek restitution of any excessive fees paid to Defendants. *See Schuyt v. Rowe Price Prime Reserve Fund, Inc.*, 835 F.2d 45, 46 (2d Cir. 1987) ("The mere fact that Schuyt has designated the relief she seeks as 'damages' does not mean that she is automatically entitled to a jury trial. . . . Schuyt seeks repayment to the fund of excessive advisory fees paid; this is essentially an equitable remedy, not a 'bona fide claim for damages.'").

<u>Second</u>, Plaintiffs contend that they seek legal restitution within the meaning of *Great-West* because they request "damages" and not a constructive trust or security interest in Defendants' funds. Pls.' Br. at 21. However, *Great-West* is not a "*per se* pronouncement that where a plaintiff seeks an award that ultimately involves money . . . such an award is a claim for legal relief." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 212-13 (3d Cir. 2004). It has always been the case, as was recognized in *Great-West*, that restitutionary damages may be awarded as an equitable remedy. *Great-West*, 534 U.S. at 215; *see also United States ex rel. Drakeford v. Tuomey Healthcare System, Inc.*, 675 F.3d 394, 403 n.15 (4th Cir. 2012) ("[A] money damages award may be a form of equitable relief if it is restitutionary." (internal quotation marks omitted)); *Brosted*, 421 F.3d at 466 ("[R]estitution may be in the form of monetary relief." (internal quotation marks omitted)); Restatement (Third) of Restitution and Unjust Enrichment § 4 (2012) (noting that while damages are traditionally thought of as a legal remedy, "this does not mean that any remedy by which the defendant is required to pay money is necessarily legal rather than equitable").

- 12 -

For instance, in *United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 223 (3d Cir. 2005), the Third Circuit held that a district court's equitable powers under the Federal Food, Drug and Cosmetic Act ("FDCA") include the power to order restitution in the form of money damages. Citing to *Great-West*, the court concluded that the government sought an equitable remedy in the form of reimbursement of the money consumers paid to defendants for products that violated the FDCA because "the restitution the government seeks is directly traceable to the [defendants'] offensive conduct and the harm this conduct caused consumers." *Id.* at 231 (emphasis in original).

Finally, Plaintiffs argue that the close to two dozen cases that have held that Section 36(b) claims are equitable are no longer "good law" because they were decided before the Supreme Court's decision in *Great-West*. *See* Pls.' Br. at 22-23. Plaintiffs reason that the "premise" of these decisions was that restitution is always an equitable remedy. *Id.* at 23. Even a cursory reading of the case law demonstrates that this is incorrect. The Section 36(b) cases explicitly recognize that restitution may not be "an exclusively equitable remedy." *Gartenberg*, 487 F. Supp. at 1006. The key consideration in these cases was that Section 36(b) actions seek disgorgement of profits—a traditional equitable remedy—in the form of excessive fees paid to the investment adviser. *Id.* at 1006-07.

For instance, in *In re Gartenberg*, the Second Circuit explained that the plaintiffs sought an equitable remedy because the issue is "whether the Trust adviser violated its fiduciary obligations by charging an exorbitant fee. If it did, the excessive portion of the fee must be returned." *In re Gartenberg*, 636 F.2d at 18 (emphasis added). Similarly, in *In re Evangelist*, the First Circuit reasoned that "the remedy Congress created—the payment of any excess fees to the company—is similar to the traditional equity remedy of an 'accounting.'" *In re Evangelist*,

760 F.2d at 29.  And, in *Kalish*, the Second Circuit noted that the remedy in a Section 36(b) action—the return of "exorbitant" advisory fees—is "restitutionary relief" that is "clearly equitable in nature regardless of whether it is called damages." *Kalish*, 928 F.2d at 592.  The rationale from these cases is, thus, entirely consistent with the standard for equitable restitution set forth in *Great-West*.[8]

## II.   THE COURT SHOULD REJECT PLAINTIFFS' REQUEST TO IMPANEL AN ADVISORY JURY.

In a single paragraph in their answering brief, Plaintiffs request that the court impanel an "advisory jury" to do what Congress and the courts say is not a task for a traditional jury.  *See* Pls.' Br. at 26.  This request should be denied.

Under Rule 39(c)(1) of the Federal Rules of Civil Procedure, "[i]n an action not triable of right by a jury, the court, on motion or on its own may try any issue with an advisory jury."  The purpose of an advisory jury is to promote judicial economy and to expedite the litigation.  *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, Nos. 04-5723, 05-7116, 2012 WL 4361443, at *1 (S.D.N.Y. Sept. 11, 2012); *Skoldberg v. Villani*, 601 F. Supp. 981, 982 (S.D.N.Y. 1985).  Generally, advisory juries are impaneled where the resolution of a claim requires a judge to apply a community-based standard of morality or reasonableness.  *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 2012 WL 4361443, at *1; *Skoldberg*, 601 F. Supp. at 982.

This is not such a case.  Instead of making the trial more efficient, impaneling an advisory jury would undermine the purpose of Rule 39(c)(1) by imposing unnecessary burdens

---

[8] In an attempt to cast doubt on the Section 36(b) cases cited in Defendants' brief, Plaintiffs make reference to the Seventh Circuit's statement in *Kamen v. Kemper Financial Services, Inc.* that *Teamsters Local No. 391 v. Terry*, 494 U.S. 558 (1990) "appears to call into question the foundation for *Evangelist* and similar holdings about § 36(b)." Pls.' Br. at 23-24.  Far from undermining the Section 36(b) case law, the Seventh Circuit in *Kamen* expressly adopted "both the holding and the rationale" of *Evangelist*, in which the First Circuit, observing that Congress intended to create an action in equity under Section 36(b), squarely held that there is no right to a jury trial on Section 36(b) claims.  *Kamen*, 908 F.2d at 1351.  In so ruling, the court distinguished *Terry*, both on its facts and in light of the different relief sought in that case.  *Id.*

- 14 -

on the Court, the parties, and prospective advisory jurors. *See, e.g., Dewey Elecs. Corp. v. Montage, Inc.*, 117 F.R.D. 73, 75 (M.D. Pa. 1987) (denying request for advisory jury noting that requirements of "openings, summations and jury instructions would be replaced by a trial brief in a bench trial, with a concomitant saving of judicial resources"); *Van Asdale v. Int'l Game Tech.*, No. 04-cv-703, 2010 WL 1490349, at *7 (D. Nev. Apr. 13, 2010) (noting an advisory jury would complicate the case and "impose a burden on jurors whose ultimate decision may not matter").

Moreover, this case does not involve the application of any community-based standards. To the contrary, "reasonableness" is an impermissible standard for judging advisory fees in Section 36(b) actions. *See Jones*, 130 S. Ct. at 1423. In fact, Congress recognized that subjecting advisory fees to a "reasonableness" review would have the undesired effect of "charging the <u>courts</u> with rate-settling responsibilities"—a task for which the courts (much less juries) "are not well suited." *Id.* at 1430 (emphasis added).

Ignoring these issues, Plaintiffs rely solely on an order entered *sua sponte* by a district judge in *In re Federated Mutual Funds Excessive Fee Litigation*, No. 2:04-cv-00352 (W.D. Pa. Mar. 7, 2011). This order is inapposite. The issue was never briefed, the court provides no rationale for its decision and, because the case was never tried, no advisory jury was ever impaneled. An advisory jury simply has no role in this case.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court strike the jury demands set forth in Plaintiffs' complaints.

Dated:  April 1, 2013

BLANK ROME LLP

By:  /s/ Jonathan M. Korn
     Jonathan M. Korn
     301 Carnegie Center, 3rd Floor
     Princeton, NJ 08540

MILBANK, TWEED, HADLEY & McCLOY LLP

     James N. Benedict (*pro hac vice*)
     Sean M. Murphy (*pro hac vice*)
     1 Chase Manhattan Plaza
     New York, NY  10005-1413
     (212) 530-5000

*Attorneys for Defendants*

- 16 -